In the Matter of GOLD MARK 35 ASSOCIATES, Appellant, v TOWN OF SOMERS et al., Respondents. [692 NYS2d 712] —In a hybrid proceeding pursuant to CPLR article 78 to review a determination of the Planning Board of the Town of Somers, dated April 9, 1997, which, after a hearing, denied the petitioner's application for a special exception use permit and an action, *inter alia,* to recover damages under 42 USC § 1983, the appeal, as limited by the petitioner's brief, is from so much of a judgment of the Supreme Court, Westchester County (Smith, J.), dated September 5, 1997, as, upon a determination that the denial of the petitioner's application for a special exception use permit was proper, dismissed the proceeding.

Ordered that the judgment is reversed insofar as appealed from, on the law, without costs or disbursements and the petition is granted to the extent that the matter is remitted to the

respondents for a new hearing and new determination on the petitioner's application for a special exception use permit, after the Planning Board of the Town of Somers sets forth appropriate criteria with respect to the issue of "special community need".

The petitioner, Gold Mark 35 Associates (hereinafter Gold Mark), applied to the respondent Planning Board of the Town of Somers (hereinafter the Planning Board), for a "special exception use permit" to construct a supermarket of 40,000 square feet. In the zone where the petitioner intended to build, the local zoning ordinance of the Town of Somers limited any building to a maximum of 10,000 square feet except by "special exception use permit" which required a showing of a "special community need" (Somers Town Code § 170-20.3.E). The Planning Board denied the petitioner's application on the ground that it did not establish the existence of a special community need. The petitioner then commenced the instant proceeding, *inter alia*, pursuant to CPLR article 78, which was dismissed, based in part upon the conclusion of the Supreme Court that there had been no showing of special community need.

A special exception use permit may be denied where there are reasonable grounds which are supported by "substantial evidence" (*Matter of Carrol's Dev. Corp. v Gibson*, 53 NY2d 813; *see, Matter of Orange & Rockland Utils. v Town Bd.*, 214 AD2d 573). Here, however, the record fails to reveal what, if any, criteria were utilized by the Planning Board to conclude that the petitioner had not demonstrated a "special community need" in support of its application. Nor is this phrase defined by the Town Code of the Town of Somers. Consequently, it cannot be determined if the denial of the petitioner's application for a special exception use permit was supported by substantial evidence. Accordingly, the matter must be remitted to the Supreme Court for a new hearing and determination after the Planning Board sets forth the appropriate criteria as to what constitutes a special community need. Santucci, Altman and McGinity, JJ., concur.

Ritter, J. P., dissents and votes to affirm the judgment insofar as appealed from, with the following memorandum: I believe that the criteria for demonstrating a special community need necessary to secure a special exception use permit under the Somers Town Code were both sufficiently discernible and not met by the petitioner and that, therefore, there should be an affirmance. Accordingly, I respectfully dissent.

The petitioner sought to build a supermarket with a blueprint "footprint" of 40,000 square feet on a parcel of property known

as Whitehall Corners, located in a zone designated "Neighborhood Shopping" (hereinafter NS) pursuant to the Town's Comprehensive Master Plan (hereinafter master plan). However, the maximum blueprint "footprint" permitted in a NS zone is 10,000 square feet. Accordingly, the petitioner applied to the respondent Planning Board of the Town of Somers (hereinafter the Planning Board) for a special exception use permit, which required a showing that the proposed nonconforming building be for a "use serving a special community need" (Somers Town Code § 170-20.3.E). The Planning Board addressed inquiries raised by the petitioner as to what might constitute such a special community need by, *inter alia*, seeking comment from the municipal planning consultants who aided in the drafting of the code provision at issue. In a memorandum drafted in response by those consultants, it was noted that in the Town's master plan, Whitehall Corners had been designated an evolving center and "an important portal to the Town". Further, the master plan provided that the "primary objective of new development should be the establishment of an entrance to Somers that is a well-defined, attractive built-up area serving a practical, daily role in the community's life" and that such a goal could best be achieved "through creation of a mixed use neighborhood center that has the shape and appearance of a village with structures of small mass housing a range of uses including residences. Commercial uses should be aimed at serving the local community". Based on such stated considerations, the memorandum proposed a four-pronged inquiry: (1) whether the nonconforming proposed use is appropriate in a neighborhood shopping area; (2) whether the nonconforming proposed use is needed to serve the local area in which it is to be located; (3) whether the nonconforming proposed use is needed or appropriate to anchor the proposed development; and (4) whether the nonconforming proposed building is designed on a "village type scale". Finally, the memorandum noted that the petitioner's proposal did appear to address the issue of additional residential housing in the area, an important consideration under the master plan, which provided that Whitehall Corners was to be "primarily at a local-oriented scale and linked to the establishment of higher density, affordable housing".

The petitioner endeavored to address the concerns discussed and criteria set forth in the memorandum by the submission of, *inter alia*, a community needs analysis report, which concluded that (1) "in today's market" a 40,000 square foot store was "the minimum rentable size for a supermarket" at the Whitehall Corners location; (2) a 40,000 square foot market

"clearly falls into the definition of a neighborhood (rather than a regional) shopping facility"; and (3) residents in the area were "substantially under served by supermarkets". In reaching its conclusion that the proposed supermarket was of neighborhood shopping center scale, the consultants analyzed an area within a three-mile radius of the proposed site. The area, which was already serviced by two other supermarkets, one of 23,000 square feet and the other of 15,000 square feet, included parts of the Town of Bedford and the Town of Lewisboro. In support of its conclusion that the proposed site would fulfill a community need, the report noted that, out of 10 towns in northern Westchester with populations of 5,000 or more, per capita food sales were lowest in the Town of Somers and were far below nationwide averages. Further, that out of seven towns, the Town of Somers also had the lowest amount of per capita floor space for supermarkets. Finally, the report noted that given modern, nationwide trends in shopping, the nationwide median size of newly-constructed supermarkets in 1995 was 54,000 square feet. The median for supermarkets in neighborhood shopping centers was 51,119 square feet. Thus, the report concluded, it was "obvious that the proposed 40,000 square foot supermarket in Whitehall Corners is well below the typical size of newly constructed supermarkets and truly represents the minimum amount of space that is acceptable in today's competitive marketplace and a supermarket of lesser size will have virtually no prospective tenants available". The draftsman of the report also appeared before the respondent Board, where he was questioned at some length.

On April 9, 1997, the Planning Board, after numerous meetings and public hearings, denied the application for a special exception use permit. In doing so, the Planning Board noted that the petitioner had not demonstrated why its proposed building, which had four times the permitted "footprint", was needed to serve "the *local community*" and how it would fit in with the master plan's call for a neighborhood center with the "shape and appearance of a village with *structures of small mass housing* a range of uses including residences" (emphasis in original). The report relied upon by the petitioner, the Planning Board noted, considered "primarily data and analysis relative to economics, demographics and trade information in the context of the supermarket industry trends" and the "trade area identified in the report extends well outside Somers". Indeed, the report identified 13 other supermarkets serving the needs of residents in the vicinity of Whitehall Corners. Further, the Planning Board found, although the report considered the underlying reasons why the supermarket industry pre-

ferred to construct large buildings, the report did not address why there was a special community need for a building here to be four times the permitted size. To the contrary, the report identified various neighborhood supermarkets, none of which had closed and all of which had less square feet of floor space than that which the petitioner argued was the minimum needed. Although evidence was presented as to per capita spending in the area, "no evidence [was] presented to show that pricing policies at individual stores within Somers and in the surrounding drawing area reflect an appreciable lack of competition resulting in significantly higher prices at the stores * * * nearest to Whitehall Corners". Finally, the respondent Board noted, the proposed master plan permitted buildings of the size proposed by the petitioner in a zone designated as a Community Shopping district.

I would affirm the Supreme Court's dismissal of the proceeding. The petitioner argues that the Planning Board's decision must be annulled because, *inter alia*, it failed to adopt the only standard in the record (the memorandum *supra*), a standard, the petitioner notes, "which [the Board] commissioned its own expert to provide" and a standard which, by the petitioner's estimation, the unrebutted evidence established was satisfied. However, the standard was both applied and not met.

Although the Planning Board stated that the phrase "special community need" was comprised of words which carry commonly understood meanings and that it was merely applying such common meanings, the difference between such a standard and the standard set forth in the memorandum is one of semantics. The memorandum did not purport to treat the phrase, "special community need" as a term of art, or as a phrase otherwise requiring expert analysis or interpretation. Rather, the memorandum merely cited and discussed the relevant provisions of the Town's master plan and zoning code and thereby provided a framework within which the common meanings of the words in the phrase "special community need" might be construed. Indeed, everything in the memorandum could have been discerned by the petitioner itself by scrutiny of the same materials. Thus, a standard was both discerned and discernible. However, the petitioner wholly failed to address such specific concerns as to the permissible look and use of Whitehall Corners and as to what might constitute a need of the local community or neighborhood. Rather, the report, using nationwide statistics and trends and conclusions drawn from scrutiny of an area that cannot be fairly characterized as a local or neighborhood area within the meaning of the Town's

master plan or zoning scheme, concluded little more than that the petitioner does not believe that a supermarket of less than 40,000 square feet would serve its interests. Finally, the community sentiment expressed to the Board was overwhelmingly against the proposed building and, although not determinative, was surely relevant to the inquiry of whether a community need had been shown, especially when it was argued, *inter alia*, that the community was underserved by supermarkets. Accordingly, I find that no demonstration of a special community need within the meaning of the Somers Town Code was made and that the Planning Board's determination was supported by substantial evidence (*see, Matter of Carrol's Dev. Corp. v Gibson,* 53 NY2d 813; *Matter of Orange & Rockland Utils. v Town Bd.,* 214 AD2d 573).